

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **Case No. 02 CR 1085** |
| | ) | **Judge Joan H. Lefkow** |
| MAMOUN ARMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

This case is before the court on a limited, *Paladino* remand from the Court of Appeals for the Seventh Circuit for the purpose of determining whether this court would have imposed the same or different sentence on defendant Mamoun Ali Arman ("Arman") had it known that the sentencing guidelines were merely advisory. Counsel for Arman and for the government have submitted sentencing memoranda on the subject.

The court found Arman's total offense level to be 26 and his criminal history category to be Category I, which, under the Guidelines, resulted in a range of imprisonment of 63 to 78 months. The court then sentenced Arman to 63 months, the lowest end of the calculated Guideline range. In doing so, this court stated "[n]ow, to me that seems like a very harsh penalty for this crime, but it's not my – my discretion is limited to that at this point." (Sentencing Tr. 14).

After reviewing the memoranda, the sentencing transcript, the pre-sentence report and the

court of appeals' opinion, the court is convinced that it would not have imposed the same sentence on Arman at the time of his original sentencing had it known that the Sentencing Guidelines were advisory and not binding.

Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in" 18 U.S.C. §3553(a)(2), which refers to the need for the sentence imposed to:

(A)     reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B)     afford adequate deterrence to criminal conduct;

(C)     protect the public from further crimes of the defendant; and

(D)     provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2). Section 3553(a) further states that in determining a proper sentence, the court shall consider the following additional factors:

(1)     the nature and circumstances of the offense and the history and characteristics of the defendant;

        . . .

(3)     the kind of sentences available;

(4)     the kinds of sentences and the sentencing range established [under the sentencing guidelines], subject to any amendments made to such guidelines by an act of Congress ...;

(5)     any pertinent policy statement ... issued by the [United States] Sentencing Commission ... subject to any amendments made to such policy statement by an act of Congress ...;

(6)     the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)     the need to prove restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Reviewing Arman's sentence in light of these factors, the court believes that 63 months of imprisonment is an overly harsh penalty for the crimes for which Arman was convicted. While trafficking in counterfeit goods of any kind is a serious offense and warrants considerable punishment, attempting to pass off generic cameras as the genuine article is one of the less serious offenses involving trafficking in counterfeit goods. Unlike counterfeit pharmaceuticals, medical devices, agricultural goods, and automotive parts, counterfeited products like cameras, handbags, sunglasses, and watches do not pose a serious threat to the health and safety of unwary consumers. *See* S. Rep. No. 98-526, at 4 (1986) (identifying as examples of public health risks the fact that (1) the Federal Aviation Administration discovered and ordered the immediate removal of shoddily manufactured counterfeit Boeing fire detection systems; (2) counterfeit brake parts have caused fatal automobile accidents, and (3) counterfeit heart pumps have been sold to more than 200 hospitals in the country). *See also* H.R. Rep. No. 104-556, at 3 (1996) (identifying as examples of public health risks the fact that (1) "[c]ounterfeit machine parts and brake pads have been linked to fatal automobile, aviation and helicopter crashes;" (2) over one million counterfeit birth control pills have caused internal bleeding in women; (3) counterfeit infant formula was distributed in California and Kentucky).

In addition, these items do not pose an appreciable threat to the revenue of the holder of the trademark. Arman sold the obviously fake cameras at a price substantially below the market value for a genuine Canon camera and thus, it seems unlikely that Arman's customers mistakenly believed they were purchasing the genuine article. Instead, for many purchasers, Arman's cameras, like the fake Louis Vuitton handbags and Gucci sunglasses commonly available on Chicago's streets, were a substitute for the genuine article that the purchasers were unable to

3

afford. As such, there is little reason to believe that Canon was cheated out of potential, legitimate sales.

Moreover, Arman's offense does not involve the type of aggravating circumstances that motivated Congress to enact the Anticounterfeiting Consumer Protection Act of 1996, which increased the potential criminal penalties for trafficking in counterfeit goods in violation of 18 U.S.C. § 2320. According to the legislative history, Congress increased the penalties for trademark counterfeiting, in part, because it was concerned that organized crime had begun to use the proceeds of counterfeiting to finance other criminal activities like "robbery, extortion and murder." S. Rep. No. 104-177 at 6 (1995). In this case, there is no evidence that Arman used the proceeds of the sale of the fake cameras to further some other criminal enterprise. In addition, while Arman sold a sizable number of cameras to his co-defendants, there is no evidence that Arman was part of the type of "organized structure that more closely resembles a sophisticated international corporation" that Congress sought to empower law enforcement to fight. *Id.*

Based upon the foregoing, and consideration of, among other things, the nature and circumstances of the offense, the history and characteristics of the defendant, and the need for the sentence to reflect the seriousness of the offense, to afford adequate deterrence, and to protect the public from future crimes, the court finds that a non-Guidelines sentence is sufficient "but not greater than necessary" to punish Arman for the instant offense.

A status hearing to set a date for a re-sentencing hearing is set for February 22, 2006 at 9:30 a.m.

4

02 CR 1085

ENTER:

*[signature: Joan H. Lefkow]*

JOAN HUMPHREY LEFKOW
United States District Judge

Dated: February 2, 2006